UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/2019

------------------------------------------------------------ X
                                           :

EMILIO GONZALEZ,                       :
                                           :

                    Plaintiff,   :
                                         :

          -against-          :               1:17-cv-6518-GHW
                                         :

CITY OF NEW YORK, *et al.*,      :       __MEMORANDUM OPINION__
                                         :          __AND ORDER__
                     Defendants. :
                                         :
------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

In February of 2015, Emilio Gonzalez claims that he spoke out against corruption and discrimination in the Office of the Comptroller of the City of New York. His conduct put a bullseye on his back within the office and inspired his coworkers to launch a campaign to end his fourteen-year career in civil service. In response to his coworkers' behavior, Mr. Gonzalez filed this lawsuit, asserting—among others—claims of discrimination, retaliation, and hostile work environment. The defendants have moved to dismiss. Because Mr. Gonzalez fails to allege that the conduct that he complains of was motivated by his membership in protected groups, the defendants' motion to dismiss is granted in part.

## II. BACKGROUND

### A. Mr. Gonzalez Uncovers the Alleged Corruption, Reports it, and is Demoted

Emilio Gonzalez ("Mr. Gonzalez" or "Plaintiff") is a Hispanic-American male who is over forty years old[1] and has been working in the Office of the Comptroller of the City of New York (the

---

[1] In the TAC, Mr. Gonzalez does not provide his actual age. The TAC simply states, "[a]t all times relevant to this action, GONZALEZ was more than 40 years of age." TAC ¶ 21.

"Comptroller's Office") for over fourteen years. Dkt. No. 76, Third Amended Complaint (the "TAC"), at ¶¶ 8-9. Mr. Gonzalez began his career in the Comptroller's Office around December 2002. *Id.* at ¶ 23. Since about February 1, 2016, and at all times relevant to this case, Mr. Gonzalez has faced various medical problems, including herniations in his spinal column, which affect his neck, back, and waist and make it difficult to work behind a desk for any appreciable length of time. *Id.* at ¶¶ 87-88.

In the Comptroller's Office, Mr. Gonzalez worked with a number of co-workers who he has named as defendants in this suit. At all times relevant to this case, Mr. Gonzalez worked with Seunghwan Kim, who was an assistant comptroller and Mr. Gonzalez's superior. *Id.* at ¶ 12. Mr. Gonzalez also worked with James Cox, who served as the director of settlements and adjudications in the Bureau of Law and Adjustments (the "Bureau") of the Comptroller's Office. *Id.* at ¶ 14. Mr. Cox was subordinate to Mr. Kim, but senior to Mr. Gonzalez. *Id.* Mr. Gonzalez also worked with Katherine Reilly, who served as deputy director of settlements and adjudications in the Bureau of the Comptroller's Office. *Id.* at ¶ 16. Ms. Reilly was also senior to Mr. Gonzalez, but subordinate to Mr. Cox and Mr. Kim. *Id.* at ¶¶ 15,17. The final employee that Mr. Gonzalez worked with and identifies as a defendant is Maria Maglio-Scotti. *Id.* at ¶ 18. Ms. Maglio-Scotti was chief of the motor vehicles unit in the Bureau of the Comptroller's Office and was also senior to Mr. Gonzalez. *Id.*

Mr. Gonzalez contends that the conduct giving rise to his case derives from his efforts to shine a light on corruption within the Comptroller's Office. Specifically, Mr. Gonzalez alleges that, from the time that Mr. Kim was appointed assistant comptroller through January 2016, he personally informed Mr. Kim that employees in the Department of Education (the "DOE") were intentionally altering claim dispositions to reflect higher rates and speed of performance. *Id.* at ¶ 25. Mr. Gonzalez also asserts that he told Mr. Kim that DOE employees were in the habit of settling

cases without proper investigation. *Id.* According to Mr. Gonzalez, Mr. Kim failed to act and said that "he did not care so long as the cases were moving and the statistics were high." *Id.* Mr. Gonzalez alleges that Mr. Cox and Ms. Reilly also exhibited indifference to misdeeds within the Comptroller's Office. With respect to Mr. Cox and Ms. Reilly, Mr. Gonzalez claims "it was clear . . . that they wanted cases disposed of, not based on merit but upon political considerations[,] which made the Comptroller look good in the eyes of the public and his political supporters." *Id.* at ¶ 26.

In February 2015, Mr. Gonzalez was promoted and became the division chief of the property damage division. *Id.* at ¶ 28. Mr. Gonzalez contends that Mr. Kim asked him to terminate Luc Pierre, a black employee in the division, "because he was making more money than any of his colleagues." *Id.* Mr. Gonzalez claims that he asked Mr. Kim whether he wanted to fire Mr. Pierre because of his race and—according to Mr. Gonzalez—Mr. Kim responded, "yes." *Id.* Because Mr. Gonzalez found nothing to warrant Mr. Pierre's termination and, furthermore, because he "felt it would be wrong to terminate [him] simply because" of his race, Mr. Gonzalez refused to fire Mr. Pierre as Mr. Kim instructed. *Id.* at ¶ 29.

During his tenure as division chief, Mr. Gonzalez also represents that he brought practices within the Comptroller's Office that he believed were prohibited by the New York City Charter, the NYC Conflicts of Interest Board, and by state and federal laws to the attention of Mr. Kim, Mr. Cox, and Ms. Reilly. *Id.* at ¶ 31. These offenses, Mr. Gonzalez claims, included: i) settling claims without proper investigation; ii) expending, approving, or otherwise authorizing the payment of taxpayer money on claims that were not properly investigated; iii) settling claims that "amounted to a *de facto* scheme to buy taxpayer votes"; and iv) reprimanding, punitively reassigning, or otherwise disciplining employees based on their race. *Id.* at ¶ 31. Mr. Gonzalez further claims that he continued to inform Mr. Kim of corruption by employees within the DOE team and that he refused to settle claims based on the "personal interests, career ambitions, and political considerations of his

supervisors," including Mr. Kim and Mr. Cox. *Id.* at ¶¶ 32, 34.

In August 2015, Mr. Gonzalez applied for a position as the deputy director of settlements and adjudications, but was not selected for the job. *Id.* at ¶ 35. Mr. Gonzalez claims that a "white female candidate with inferior credentials" was selected for the position. *Id.* On January 15, 2016— less than one year after his promotion to division chief—Mr. Gonzalez was demoted to a position with a reduced salary and lesser responsibilities. *Id.* at ¶ 36. In this demoted position, Mr. Gonzalez claims that he that he had fewer responsibilities than when he began in the Comptroller's Office in 2002. *Id.* at ¶ 37.

Mr. Gonzalez posits that he was demoted because he refused to settle claims based on political considerations and without proper evaluation and investigation and, furthermore, because he refused to terminate Mr. Pierre as Mr. Kim had directed. *Id.* at ¶ 38. Before his demotion in January 2016, Mr. Gonzalez never had any performance issues. *Id.* at ¶ 39. Although he was told that his demotion represented a broader reorganization strategy, Mr. Gonzalez argues that the Comptroller's Office has a pattern and practice of discriminating against older employees of color.[2] *Id.* at ¶¶ 40-41.

### B. Mr. Gonzalez Files Complaints About Alleged Retaliation and is Eventually Terminated

On September 21, 2016, Mr. Gonzalez filed an internal grievance (the "Internal Grievance") against Mr. Kim, Mr. Cox, Ms. Reilly, and Ms. Maglio-Scotti (collectively, the "Individual Defendants"). *Id.* at ¶ 48. In the Internal Grievance, Mr. Gonzalez accused the Individual Defendants of unlawfully discriminating and retaliating against him for his refusal to participate in the fraudulent and improper settlement of claims. *Id.* Two months later—in November 2016—Mr.

---

[2] Mr. Gonzalez claims that Mr. Kim demoted an African-American employee who was over 50 years of age and drastically cut her pay, while declining to take a similar course of action with respect to a white employee of the same sex and age range. TAC at ¶ 42. Mr. Gonzalez further alleges that a white, male employee was inappropriately marking cases disposed of in an effort to create high disposition statistics. *Id.* at ¶¶ 45-47. When supervisors discovered this employee's conduct, however, they neither demoted him nor reduced his salary. *Id.* at ¶ 47.

Gonzalez filed an unlawful discrimination and retaliation complaint with the Equal Employment Opportunity Commission (the "EEOC Complaint").[3] On January 13, 2017, Mr. Gonzalez filed a complaint with the Department of Investigations of the City of New York (the "DOI Complaint") alleging that his supervisors unlawfully discriminated against him and that employees of the Comptroller's Office engaged in corruption. *Id.* at ¶ 50.

After his filing of the Internal Grievance, the EEOC Complaint, and the DOI Complaint, Mr. Gonzalez claims that Mr. Kim, Mr. Cox, Ms. Reilly, and Ms. Maglio-Scotti "began to act together and in concert to harass and intimidate [him]." *Id.* at ¶ 51. On February 13, 2017—one month after Mr. Gonzalez filed the DOI Complaint—the Individual Defendants filed charges of employment misconduct (the "Employee Misconduct Charges") against him. *Id.* at ¶ 52. Mr. Gonzalez represents that the substance of the Employee Misconduct Charges consisted of incidents that date as far back as November 2, 2002. *Id.* at ¶ 52. The Individual Defendants also took Mr. Gonzalez to trial at the New York City Office of Administrative Trials and Hearings (the "OATH"). *Id.* at ¶ 53. Mr. Gonzalez contends that the Individual Defendants brought the Employee Misconduct Charges against him in hopes of ending his civil service career. *Id.* On April 30, 2018, the City terminated his employment. *Id.* at ¶ 106.

### C. Mr. Gonzalez's Lawsuit

Mr. Gonzalez filed this lawsuit in August 2017, after the Individual Defendants filed the Employee Misconduct Charges. In the operative complaint—the TAC—Mr. Gonzalez asserts a litany of claims and names the Individual Defendants in their personal and official capacities as well as the City of New York (the "City") as defendants (collectively, the "Defendants"). In count one, Mr. Gonzalez asserts a claim of retaliation under 42 U.S.C. §§ 1981 and 1983 as well as the New York City Human Rights Law (the "NYCHRL") against the Individual Defendants. *See* TAC at

---

[3] Mr. Gonzalez received a right to sue letter on August 23, 2017. *Id.* at ¶ 56.

¶¶ 58-67. With count two, Mr. Gonzalez asserts a cause of action for discrimination and retaliation under §§ 1981 and 1983 as well as the NYCHRL against the Individual Defendants. *See id.* at ¶¶ 68-71. In his third count, Mr. Gonzalez states a claim for retaliation under §§ 1981 and 1983 and the NYCHRL for being denied the position for which he applied in November 2016. *See id.* at ¶¶ 72-76. With his fourth count, Mr. Gonzalez asserts a claim for retaliation under §§ 1981 and 1983 as well as the NYCHRL against the City as well as the Individual Defendants for the filing of the Employee Misconduct Charges before OATH. *See id.* at ¶¶ 77-84. In count five, Mr. Gonzalez asserts a claim of hostile work environment, violation of due process, disability discrimination, and retaliation under §§ 1981 and 1983 and the NYCHRL. *See id.* at ¶¶ 85-99. In count six, Mr. Gonzalez states a claim for constructive discharge under §§ 1981 and 1983 and the NYCHRL against the Individual Defendants and the City. *See id.* at ¶¶ 100-04. As his seventh count, Mr. Gonzalez asserts an additional claim of retaliation under §§ 1981 and 1983 and the NYCHRL against the City. *See id.* at ¶¶ 105-09.

### III.    PROCEDURAL HISTORY

Mr. Gonzalez filed his initial complaint on August 25, 2017. Dkt. No. 1. On December 4, 2017, the Defendants requested a pre-motion conference for leave to file a motion to dismiss. Dkt. No. 30. Two days later, the Court granted Defendants leave to file a motion to dismiss. Dkt. No. 31. In response, Mr. Gonzalez sought leave to file an amended complaint. The Court granted Mr. Gonzalez's request and he filed his amended complaint on December 7, 2017. Dkt. No. 33. Again, the Court granted Defendants leave to file a motion to dismiss and Defendants filed their motion on March 9, 2018. Dkt. No. 44. Mr. Gonzalez again sought leave to file an amended complaint, which the Court granted. Dkt. No. 52. On April 18, 2018, Mr. Gonzalez submitted a second amended complaint. Dkt. No. 53. Defendants sought leave to dismiss the second amended complaint, Dkt. No.54, which again prompted Mr. Gonzalez to seek leave to amend. The Court granted Mr.

Gonzalez leave to amend the second amended complaint on May 2, 2018, and he submitted the

TAC on June 1, 2018. Dkt. No. 76. On June 14, 2018, the Court granted Defendants leave to file a

motion to dismiss the TAC (the "Motion to Dismiss"), which Defendants filed on June 21, 2018.

Dkt. No. 84. Mr. Gonzalez filed his opposition to the Motion to Dismiss on July 13, 2018. Dkt.

No. 88. Defendants filed their reply on July 20, 2018. Dkt. No. 89.

In the Motion to Dismiss, Defendants seek to dismiss Mr. Gonzalez's: i) claims asserted

under § 1981; ii) claims brought under § 1983 asserted against the City; iii) claims of discrimination

and retaliation brought under § 1983 against the Individual Defendants; iv) claims of retaliation and

discrimination asserted under the NYCHRL against the Individual Defendants; v) claims of hostile

work environment as asserted under § 1983 and the NYCHRL against the Individual Defendants;

vi) claim of disability discrimination as asserted under the NYCHRL against the Individual

Defendants; and vii) claim of First Amendment retaliation.

## IV. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint

must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com,*

*Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009). "First, although a court must accept as true all of the allegations contained in a

complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d

66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at

678). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true,

'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The scope of what a court may consider on a motion to dismiss is limited. When deciding a motion to dismiss, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).[4]

## V. DISCUSSION

### A. Mr. Gonzalez's Claims Under § 1981

Mr. Gonzalez asserts claims of retaliation, discrimination, hostile work environment, and constructive discharge under § 1981. In *Duplan v. City of New York*, however, the Second Circuit held

---

[4] In their memoranda of law, the parties dispute whether the Court can consider, in deciding the Motion to Dismiss, the exhibits attached to the Declaration of Ivan A. Mendez, Jr., Dkt. No. 85, Exs. A, B, C, D, E. *See* Plaintiff's Opposition at 5-6; Defendants' Reply at 2-3. When deciding a motion to dismiss, a court may consider "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," along with documents so heavily relied upon that they are integral to the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). For a document to be integral to a complaint, "the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon th[e] document[] in framing the complaint." *Houlahan v. Raptor Trading Sys., Inc.*, No. 16 CIV. 9620 (PGG), 2018 WL 3231662, at *4 (S.D.N.Y. Feb. 12, 2018). Exhibit A is a copy of the Notice of Charge of Discrimination concerning Mr. Gonzalez's 2016 EEOC Complaint. Mr. Gonzalez references this document and appears to have relied on it in framing the TAC. *See, e.g.*, TAC at ¶ 49 ("On or about November 7, 2016, GONZALEZ filed an unlawful discrimination and retaliation complaint with the United States Equal Employment Opportunity Commission . . . against his supervisors at the Comptroller's Office."). Exhibit B is a copy of the DOI Complaint. As with Exhibit A, it appears that Mr. Gonzalez relied on Exhibit B in framing the TAC. *See, e.g.*, *id.* at ¶ 50 ("On or about January 13, 2017, GONZALEZ filed an unlawful discrimination complaint against his supervisors with the Department of Investigations of the City of New York and complained of corruption by members of the NYC Comptroller's Office."). The same holds true for Exhibit D. Exhibit D is a copy of the Employee Misconduct Charges that the Individual Defendants filed against Mr. Gonzalez. The Employee Misconduct Charges are integral to the TAC. *See, e.g.*, *id.* at ¶ 52 ("On or about February 13, 2017, within one month of the aforesaid corruption/discrimination complaint, defendants filed charges of employee misconduct against GONZALEZ."); *see also id.* at ¶¶ 79-89, 101. Accordingly, the Court was permitted to consider Exhibits A, B, and D in deciding the Motion to Dismiss. The Court reaches a different conclusion with respect to Exhibits C and E. Exhibit C is a copy of the Department of Investigation of the City of New York's referral to the Office of the Comptroller's General Counsel. The TAC is devoid of any reference to Exhibit C. Furthermore, Defendants concede, in their memorandum in support of the Motion to Dismiss, that the TAC neither explicitly nor implicitly mentions this exhibit. *See* Defendants' Memorandum at 3, n.2. Because Exhibit C is neither integral to nor integrated into the TAC, the Court did not consider it in deciding the Motion to Dismiss. Finally, Exhibit E is a copy of the report and recommendation that Administrative Law Judge Noel R. Garcia issued at the conclusion of Mr. Gonzalez's proceedings before OATH, which recommends his termination. In the TAC, Mr. Gonzalez references that Defendants took him to trial before OATH. *See, e.g.*, *id.* at ¶¶ 53, 79-81,101,103. Nevertheless, Mr. Gonzalez's allusions to OATH in the TAC focus on the charges that Defendants brought against him in that form. There is no indication that Mr. Gonzalez relied on the report and recommendation of Administrative Law Judge Garcia in formulating the TAC. Because Exhibit E was neither integral to nor incorporated into the TAC, the Court did not consider it in deciding the instant motion to dismiss.

that "§ 1981 does not provide a separate private right of action against state actors." 888 F.3d 612, 621 (2d Cir. 2018). The Second Circuit reached this conclusion because it found that § 1983 already provided a remedy against state actors and that therefore, "there is no reason to infer from the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy." *Id.* at 620-21.

Defendants ask this Court to dismiss the litany of claims Mr. Gonzalez asserts under § 1981 on these grounds. Mr. Gonzalez raises two counterarguments in response. First, Mr. Gonzalez contends that *Duplan* only requires the Court to dismiss the claims that he asserts against the City, not against the Individual Defendants because, he contends, *Duplan*'s holding is limited to municipalities. *See* Dkt. No. 87, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition") at 6. On this point, the Court disagrees. In *Duplan*, the Second Circuit made clear that "§ 1981 does not provide a separate private right of action against *state actors*." 888 F.3d at 621 (emphasis added). Municipal employees, such as the Individual Defendants in this case, are state actors. *See, e.g., Roddini v. City Univ. of New York*, No. 02 CIV. 4640 (LAP), 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21, 2003) (explaining that "state employment has generally been deemed sufficient to render the [individual] defendant a state actor"). Therefore, *Duplan*'s holding applies to the Individual Defendants and bars Mr. Gonzalez from asserting claims under § 1981 against them.

As his second counterargument, Mr. Gonzalez argues that *Duplan* does not preclude him from asserting claims under § 1981 against the Individual Defendants in their individual capacities. *See* Plaintiff's Opposition at 6. Again, this argument falls short. In *Jett v. Dallas Indep. Sch. Dist.*, the Supreme Court held that "the express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and law, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed

against a state actor." 491 U.S. 701, 735 (1989) (internal citation and quotation marks omitted). The Supreme Court's holding in *Jett* has been interpreted to encompass not only governmental entities, but also individuals sued in their individual capacities who are also state actors. *See, e.g.*, *Whaley v. City Univ. of New York*, 555 F. Supp. 2d, 381, 400-01 (S.D.N.Y. 2008). Accordingly, Mr. Gonzalez is barred from asserting claims under § 1981 against the Individual Defendants in their individual capacities. Therefore, Defendants' motion to dismiss the claims that Mr. Gonzalez asserts under § 1981 in counts one through seven is GRANTED. The Court denies Mr. Gonzalez leave to replead these claims because any attempt to replead would be futile. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (noting that leave to amend need not be granted where the proposed amendment would be futile).

### B. Mr. Gonzalez's Claims Under § 1983

Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law. *See* 42 U.S.C. § 1983. In the TAC, Mr. Gonzalez asserts claims under § 1983 against both the City and the Individual Defendants. The Court discusses these claims in turn below.

#### i. Section 1983 Claims against the City

In the TAC, Mr. Gonzalez asserts two claims against the City under § 1983. In count four, he asserts a retaliation claim against the City, alleging that it "ha[s] continued to retaliate against [him] by either providing the information with which to charge [him] with incompetence before OATH, or providing testimony before OATH, and seeking to terminate [him] from his employment and civil service career." TAC at ¶ 79. Mr. Gonzalez claims, in count seven, that the City retaliated against him by terminating him. *See id.* at ¶¶ 105-09.

Mr. Gonzalez's claims against the City under § 1983 fail for at least two reasons. As an initial matter, Mr. Gonzalez abandoned these claims. In their Memorandum of Law, Defendants

argue that the Court should dismiss Mr. Gonzalez's claims against the City under § 1983 because he failed to plead that the challenged actions were part of a municipal policy, practice, or custom, or that any of the Individual Defendants were municipal policymakers, as required under *Monell. See* Dkt. No. 86 Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defendants' Memorandum") at 10-12. In his opposition, Mr. Gonzalez fails to respond to this argument. As a result, Mr. Gonzalez has abandoned these claims. *See, e.g.*, *Sanchez v. City of NY*, No. 15 Civ. 9940, 2017 U.S. Dist. LEXIS 123557, at *4-5 (S.D.N.Y. Aug. 4, 2017) ("At the outset, the Court notes that these plaintiffs, who are represented by counsel, filed an opposition to the motions to dismiss that makes no attempt to respond to any of defendants' legal arguments. Therefore, plaintiffs have abandoned their claims.").

Second, even if Mr. Gonzalez has not abandoned these claims, the TAC fails to state a claim against the City under § 1983. Under § 1983, municipalities are not vicariously liable for their employees' actions. *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). Plaintiffs seeking to hold a municipality liable under § 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

A plaintiff may satisfy the "policy or custom" prong in one of four ways: by alleging the existence of 1) a formal policy, *see Monell*, 436 U.S. at 690; 2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*, 475 U.S. at 483-84; 3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or 4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). Furthermore, "it

is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

Here, Mr. Gonzalez's *Monell* claims fall woefully short. The TAC fails to provide factual allegations in connection with the § 1983 claims that he asserts against the City in counts four and seven. The TAC takes no steps toward articulating any of the four ways to satisfy the "policy or custom" prong required to state a claim under § 1983 against a municipality. *See* TAC ¶¶ 77-84, 100-04. Accordingly, Defendants' motion to dismiss Mr. Gonzalez § 1983 claims asserted against the City as articulated in counts four and seven is GRANTED. The Court grants Mr. Gonzalez leave to replead counts four and seven with respect to the City. *See Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead.").

### ii. Section 1983 Claims against the Individual Defendants in their Official Capacities

In the TAC, when describing his claims under § 1983, Mr. Gonzalez explains that he "brings these claims against the individual defendants in both their individual and official capacities." TAC at ¶ 6. However, because Mr. Gonzalez does not properly plead claims under § 1983 to impose liability on individual, municipal-employee defendants in their official capacities, the entirety of his § 1983 claims against the Individual Defendants in their official capacities fail.

Because "[s]ection 1983 claims against individual municipal employees in their official capacities are tantamount to a § 1983 claim against the municipality itself . . . to establish a basis for liability against municipal employees, a plaintiff must allege the existence of a municipal policy or custom that resulted in the underlying violations allegedly committed by the municipal employee defendants." *Fredericks v. City of New York*, No. 12 Civ. 3734, 2013 WL 839584, at *3 (S.D.N.Y. Mar.

6, 2013); *see also Patterson v. Cty. of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004) ("[W]hen the defendant . . . [is an] individual sued in his official capacity . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom."); *see also Hafer v. Melo*, 502 U.S. 21, 21 (1991).

Here, the Court cannot identify a single allegation in the TAC that contends that the Individual Defendants carried out the conduct for which Mr. Gonzalez seeks to impose liability under § 1983 pursuant to a municipal policy or custom. Therefore, the entirety of Mr. Gonzalez's claims against the Individual Defendants in their official capacities fail as pleaded. Accordingly, Defendants' motion to dismiss Mr. Gonzalez claims under § 1983 against the Individual Defendants in their official capacities as articulated in counts one through seven is GRANTED. *See Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11-CV-8876 (CS), 2016 WL 4540837 at *7 (dismissing plaintiff's § 1983 claims against municipal employees in their official capacities where her complaint "provided no facts that would allow [the court] to plausibly infer that [the defendants] acted pursuant to a municipal custom or practice permitting the violation of plaintiff's constitutional rights."). The Court grants Mr. Gonzalez leave to replead these claims. *See Cruz v. TD Bank, N.A.*, 742 F.3d at 523.

   iii. <u>Section 1983 Claims against the Individual Defendants in their Individual Capacities</u>

To state a claim for relief under § 1983 against individual defendants that will withstand a motion to dismiss, a plaintiff must allege that: "(1) the [i]ndividual [d]efendants were acting under color of state law, and (2) the [i]ndividual [d]efendants' conduct deprived [the plaintiff] of a constitutional or a federal statutory right." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 602 (S.D.N.Y. 2011) (citing *Washington v. Cty. of Rockland*, 373 F.3d 310, 315 (2d. Cir. 2004)). Furthermore, an individual may be held liable under § 1983 only if that individual is personally involved in the alleged deprivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir.

2015); *see also Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) ("Because Section 1983 imposes liability only upon those who actually cause a deprivation of rights, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal citation omitted). Additionally, "[t]o lay a proper foundation for individual liability, the plaintiff must plead specific, nonconclusory factual allegations to establish the participation . . . of the individual defendants, or [his or her] claims against them will be dismissed." *Raymond v. City of New York*, 317 F. Supp. 3d 746, 784 (S.D.N.Y. 2018) (internal citation omitted).

Defendants ask the Court to dismiss Mr. Gonzalez's claims of discrimination, retaliation, hostile work environment, and deprivation of due process asserted against the Individual Defendants under § 1983. The Court evaluates these claims below.

### 1. Discrimination

In the TAC, Mr. Gonzalez asserts claims of discrimination in counts two and five. In count five, Mr. Gonzalez specifies the form of discrimination as disability discrimination; Mr. Gonzalez does not detail the basis upon which the Individual Defendants allegedly discriminated against him that gave rise to the cause of action he asserts in count two. However, in addition to his disability, Mr. Gonzalez's TAC can be construed to allege that the Individual Defendants discriminated against him based on his race, *see, e.g.*, TAC at ¶¶ 8,35, 41,44, and his age, *see, e.g.*, TAC at ¶¶ 21, 41-42. Therefore, the Court understands the discrimination claims articulated in counts two and five to be on the basis of Mr. Gonzalez's disability, age, and race.

### a. *Disability Discrimination*

To the extent that Mr. Gonzalez seeks to assert a claim of disability discrimination under § 1983, that effort fails. Claims of disability discrimination are not actionable under § 1983. *See Bd. of Trs. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *see*

*also Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 590 (S.D.N.Y. 2014) ("However, freedom from discrimination on the basis of disability is a right secured by statute . . . not by the Constitution."). Accordingly, Mr. Gonzalez's claim for disability discrimination against the Individual Defendants in their individual capacities under § 1983 fails. Defendants' motion to dismiss count five's disability discrimination claim as to the Individual Defendants in their individual capacities is GRANTED. The dismissal is without leave to replead the claim because any attempt to replead on this basis would be futile. *See Advanced Magnetics, Inc.*, 106 F.3d at 18.

b. *Age and Race Discrimination*

"[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race . . . ." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (internal quotation marks omitted). "[R]acial discrimination under the Equal Protection Clause requires a racially discriminatory purpose," *Howard v. Senkowski*, 986 F.2d 24, 26 (2d Cir.1993), and "the test is whether a discriminatory purpose has been a *motivating factor* in the decision." *Id.* at 27 (internal quotation marks omitted).

As stated above, when drawing all reasonable inferences in Mr. Gonzalez's favor, the TAC can also be read to suggest that Mr. Gonzalez experienced discrimination based on his age. It is an open question in this Circuit whether age discrimination is an appropriate basis for a § 1983 cause of action, especially in the absence of an ADEA cause of action. *See Shein v. New York City Dep't of Educ.*, No. 15-cv-4236, 2016 WL 676458, at 6 n.3; *see also Piccone v. Town of Webster*, 511 Fed. App'x 63, 63 n.1 (2d Cir. 2013) (summary order) ("It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983."). In the absence of clear guidance, judges in this District have allowed plaintiffs to assert claims of age discrimination under § 1983. *See, e.g., Lebada v. New York City Dep't of Educ.*, No. 14 CIV 758 (LAK)(GWG), 2016 WL 626059, at *13

(S.D.N.Y. Feb. 8, 2016); *Kunik v. New York City Dep't of Educ.*, No. 15-cv-9512 (VSB), 2017 WL 4356764, at *10 (S.D.N.Y. Sept. 29, 2017). The Court follows the same approach here.

To state a claim of discrimination under § 1983, a plaintiff must allege two elements: "(1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 590 (S.D.N.Y. 2018) (internal citation and quotation marks omitted). Here, even assuming—favorably to Mr. Gonzalez—that the TAC adequately pleads a claim for discrimination based on his race or age under § 1983, his claims against the Individual Defendants fail because he does not allege that they were personally involved in any alleged constitutional deprivations. *See Lovick v. Schriro*, No. 12–CV–7419, 2014 WL 3778184, at *3 (S.D.N.Y. July 25, 2014) (dismissing § 1983 claims where the complaint contained "no allegations whatsoever indicating that [the defendants] were personally involved in the purported violations" of the plaintiff's constitutional rights); *see also Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted)).

The Court has considered the allegations that Mr. Gonzalez presents with respect to each of the Individual Defendants. The TAC provides the greatest detail with respect to Mr. Kim, but still fails to allege his personal involvement in any of the constitutional deprivations that Mr. Gonzalez claims that he experienced. As explained above, Mr. Gonzalez alleges that Mr. Kim instructed him to fire Mr. Pierre because of his race and, furthermore, that he disparately treated older, non-white employees. *See* TAC at ¶¶ 28-29, 41-42,45-47. Still, the TAC does not allege that Mr. Kim was personally involved in Mr. Gonzalez's demotion, in his failure to be promoted, or in any other conduct that can be construed as discriminatory. *See* TAC at ¶¶ 35-38. The other allegations that Mr. Gonzalez describes that involve Mr. Kim are cursory, non-specific, and, therefore, fail to

adequately plead his personal involvement.  Mr. Gonzalez contends, for example, that "the Comptroller's Office ha[d] a pattern and practice of discrimination against older employees of color, especially since [Mr.] Kim became an [a]ssistant [c]omptroller." TAC at ¶ 41.  Similarly, Mr. Gonzalez contends that Mr. Kim "aided and abetted [his] demotion and salary cut." TAC at ¶ 42.  These allegations do not adequately plead Mr. Kim's personal involvement. *See, e.g.*, *Guzman v. City of New York*, No. 10 Civ. 1048 (DLC), 2011 WL 2652572, at *3 (S.D.N.Y. July 7, 2011) (dismissing plaintiff's claims against defendant where, in attempting to demonstrate defendant's personal involvement, plaintiff alleged only "naked assertions devoid of . . . factual enhancement." (quoting *Iqbal*, 129 S.Ct. at 1949)).  The Court concludes that Mr. Gonzalez's claims with respect to Mr. Kim fail to allege his personal involvement and, accordingly, must be dismissed.

The TAC provides far less detail with respect to how the other Individual Defendants allegedly discriminated against Mr. Gonzalez because of his age or his race.  Mr. Gonzalez represents that, after his demotion, the Individual Defendants "offered differing justifications for their action." TAC at ¶ 40.  To the extent that Mr. Gonzalez includes this detail to allege that the Individual Defendants' were personally involved in the discriminatory decision to demote him, this allegation fails to reach the required level of specificity. *See Guzman*, 2011 WL 2652572, at *3.  Accordingly, Mr. Gonzalez's claims asserting discrimination under § 1983 against the Individual Defendants fail and Defendants' motion to dismiss the discrimination claims articulated in counts two and five against the Individual Defendants in their individual capacities is granted.  The Court grants Mr. Gonzalez leave to replead these claims. *See Cruz v. TD Bank, N.A.*, 742 F.3d at 523.

### 2.  Retaliation

Mr. Gonzalez asserts a host of retaliation claims against the Individual Defendants under § 1983. *See* TAC at ¶¶ 58-67, 68-84, 88-98.  In the Motion to Dismiss, Defendants move to dismiss the entirety of these claims.  For the reasons explained below, the Court concludes that Mr.

Gonzalez has adequately pleaded claims of retaliation against the Individual Defendants under § 1983 so as to survive the Motion to Dismiss.

### a. *Fourteenth Amendment Retaliation Claims*

To establish a *prima facie* case of unlawful retaliation under § 1983, "an employee must show that (1) he [or she] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (internal quotation marks omitted); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) ("[f]or a retaliation claim under § 1983 to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination."). "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)).

Though "the Second Circuit Court of Appeals has declined to draw 'a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action,'" decisions by judges in this District have inferred a causal relationship when three or fewer months have elapsed. *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 991 (S.D.N.Y. 2017) (quoting *Littlejohn*, 795 F.3d at 319); *see also Day v. City of New York*, 2015 WL 10530081, at *13 (S.D.N.Y. Nov. 30, 2015) ("[T]he Second Circuit has held that an adverse action that occurs within two months or less of a protected activity . . . is sufficient to survive a motion to dismiss on the issue of causation.") (citing *Vega*, 801 F.3d at 92). At the same time, however, courts in the Second

Circuit "have found a causal connection where there were even longer gaps [between the protected activity and the adverse employment action] but it was plausible that there was no earlier opportunity to retaliate." *EEOC v. Day & Zimmerman NPS, Inc.*, No. 15-CV-01416-VAB, 2016 WL 1449543, at *4 (D. Conn. Apr. 12, 2016) (internal citation and quotation marks omitted).

Mr. Gonzalez engaged in protected activity by filing the Internal Grievance on September 21, 2016, which reported that the Individual Defendants falsely settled claims in a manner that disproportionally benefitted Caucasians. *See Vega*, 801 F.3d at 91 (complaining about racial discrimination constitutes protected activity). Mr. Gonzalez also engaged in protected activity by filing the EEOC Complaint on November 7, 2016. *See id.* For the purposes of the Motion to Dismiss, Defendants do not challenge that these actions constitute protected activity. *See* Defendants' Memorandum at 15.

Mr. Gonzalez contends that the Individual Defendants retaliated against him by: (1) failing to promote him to the deputy director of settlements and adjudications position in August of 2015, *see* TAC at ¶¶ 62-67; (2) demoting him in January of 2016, *see id.* at ¶¶ 68-71; (3) failing to hire him as a senior court representative in November of 2016, *see id.* at ¶¶ 73-76; and (4) filing disciplinary charges against him in January of 2017, *see id.* at ¶¶ 78-81.

Defendants asks this Court to dismiss Mr. Gonzalez's retaliation claims because, they contend, he has not adequately pleaded causation. With respect to the denied promotion in August of 2015 and the demotion in January of 2016, Defendants contend that Mr. Gonzalez cannot present these as incidents of retaliation because they occurred before he complained of any unlawful discrimination or retaliation, thereby negating any inference of retaliatory intent. *See* Defendants' Memorandum at 16.

In response, Mr. Gonzalez contends that he engaged in two additional protected activities that Defendants fail to recognize. First, Mr. Gonzalez contends that he engaged in protected

activity in February of 2015 when he refused to comply with Mr. Kim's directive to fire Mr. Pierre because of his race. *See* Plaintiff's Opposition at 11. Second, Mr. Gonzalez argues that he engaged in protected activity each time that he "brought to the attention of his supervisors between August 2015 and January 2016 the improper settlement of claims and the fact that many of the beneficiaries of these settlements were Caucasian." *Id.* As such, Mr. Gonzalez rejects Defendants' claim that the August 2015 failure to promote and January 2016 demotion lacked an inference of retaliation: it was his refusal to fire Mr. Pierre and his repeated speaking out against the discriminatory settlement of claims in the Comptroller's Office that served as a predicate for the adverse actions that he suffered in February 2015 and January 2016. The Court agrees that Mr. Gonzalez has alleged that he engaged in protected activity by refusing to comply with Mr. Kim's order to fire an employee because of his race and by allegedly opposing his supervisors' discriminatory practices in claim settlement. *See Vega*, 801 F.3d at 91.

Defendants argue that Mr. Gonzalez fails to satisfy the causation element of his retaliation claims even if the Court considers his alleged refusal to fire Mr. Pierre in February 2015 to be protected activity. *See* Dkt. No. 89, Defendants' Reply Memorandum of Law ("Defendants' Reply") at 9. Defendants do not respond to Mr. Gonzalez's second, additional basis of protected activity: his claim that he brought discriminatory practices to the attention of his supervisors multiple times between August 2015 and January 2016.

The Court agrees that Mr. Gonzalez's refusal to comply with Mr. Kim's alleged instruction to fire Mr. Pierre in February of 2015 is too far in time from any of the allegedly retaliatory actions that the Individual Defendants carried out to adequately plead the causation element of Mr. Gonzalez's retaliation claims through temporal proximity on its own. Mr. Gonzalez's refusal to terminate Mr. Pierre occurred more than six months before the first retaliatory action that he complains of, which was a failure to promote. *See Flood v. UBS Glob. Asset Mgmt., Inc.*, No. 10. CIV

00374 (RJH), 2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012) (explaining that courts in this Circuit have held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation).

As explained above, however, Mr. Gonzalez also alleges that he complained of the discriminatory settlement of claims within the Comptroller's Office on multiple occasions between February 2015 and January 2016. *See* TAC at ¶¶ 25-27, 31-34. Mr. Gonzalez does not specify how frequently, or on which dates he informed his supervisors of the improper conduct. But, to survive a motion to dismiss under Rule 12(b)(6), a complaint must simply "contain sufficient factual mater . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). A plaintiff need not provide "detailed factual allegations," but must assert "more than labels and conclusions," *Twombly*, 550 U.S. at 555, and the Court must not only accept the allegations in the TAC as true, but also draw all reasonable inferences in Mr. Gonzalez's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*, 493 F.3d 87, 98 (2d Cir. 2007). Here, drawing all inferences in Mr. Gonzalez's favor, the window of time in which he claims that he advised his supervisors of the discriminatory claim resolution practices in the Comptroller's Office overlaps with the denial of his promotion in August 2015 and his demotion in January 2016. Accordingly, the Court concludes that he has adequately pleaded the causation prong of his retaliation claims with respect to these two allegedly retaliatory acts indirectly, by alleging that that the protected activity of repeatedly opposing discrimination was closely followed by adverse actions.

Defendants also challenge the other two incidents of alleged retaliation that Mr. Gonzalez pleads because, as before, they contend that the time period between Mr. Gonzalez's protected activities and the allegedly retaliatory events is too remote to satisfy causation. *See* Defendants' Memorandum at 17. Mr. Gonzalez, in response, argues that the TAC satisfies the causation element for these retaliatory actions by pleading retaliatory animus. *See* Plaintiff's Opposition at 11. In cases

involving claims of retaliation asserted under § 1983, judges in this District have concluded that a plaintiff can allege facts that give rise to a plausible inference of retaliatory animus sufficient to withstand a motion to dismiss. *See, e.g.*, *Petyan v. New York City Law Dep't*, No. 14 CIV. 1434 (GBD) (JLC), 2015 WL 4104841, at *5 (S.D.N.Y. July 2, 2015) ("This Court agrees that Plaintiff pleads sufficient facts to suggest an inference of retaliation and should be given the opportunity to develop the record further in pursuit of this claim."); *Gadson v. Goord*, No. 96 CIV. 7544 (SS), 1997 WL 714878, at *8 (S.D.N.Y. Nov. 17, 1997) ("[T]he Court finds that plaintiff does allege a sequence of events which may be read as providing some support for an inference of retaliation sufficient to withstand a motion to dismiss.); *see also Woodward v. Lytle*, No. 916 CV 1174 (NAM) (DEP), 2017 WL 9511175, at *9 (N.D.N.Y. Aug. 15, 2017).

The Court reaches the same conclusion here. Before he refused to fire Mr. Pierre in February of 2015, Mr. Gonzalez contends that he never had any performance issues or was the subject of any disciplinary action. *See* TAC at ¶¶ 39, 54. As explained above, Mr. Gonzalez's refusal to fire Mr. Pierre is too removed from any of the retaliatory acts that Mr. Gonzalez describes for it to satisfy the causation prong of his claims through temporal proximity alone. Nevertheless, in the TAC, Mr. Gonzalez pleads that his refusal to terminate Mr. Pierre in February of 2015 initiated a sequence of events that satisfactorily plead causation by suggesting retaliatory animus. After he refused to comply with Mr. Kim's supposed instruction to fire an employee because of his race, Mr. Gonzalez contends that Mr. Cox, Ms. Reilly, and Ms. Maglio-Scotti exhibited hostility toward him. *Id.* at ¶ 62. In February of 2015 and throughout the following months, Mr. Gonzalez alleges that he repeatedly told his supervisors of discriminatory practices and corruption within the Comptroller's Office. Then, in August of 2015, Mr. Gonzalez contends that he was passed over for a promotion in favor of a less-credentialed candidate. *Id.* at ¶ 35. In September of 2016, Mr. Gonzalez filed the Internal Grievance and in November 2016—after being demoted in January 2016—the Individual

Defendants refused to elevate him to a position that he had had previously held for many years and for which he was qualified. *See id.* at ¶¶ 72-76. Mr. Gonzalez then filed the EEOC charge in November of 2016. In February of 2017, the Individual defendants filed the Employee Misconduct Charges against him. Accordingly, the Court concludes that Mr. Gonzalez has adequately pleaded the causation prong of his retaliation claims by pleading facts that suggest an inference of retaliatory animus for all four of the retaliatory acts that Mr. Gonzalez pleads in his complaint.[5] Accordingly, Defendants' motion to dismiss Mr. Gonzalez's claims of retaliation under § 1983 against the Individual Defendants as asserted in counts one, two, three, four, and five is DENIED.

### b. *First Amendment Retaliation*

To state a claim for First Amendment retaliation, a plaintiff must plead that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015). The determination of whether speech is protected is not a question of fact, but rather a question of law for the court. *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999). In *Garcetti v. Ceballos*, the Supreme Court held that the inquiry into whether an individual's speech is protected by the First Amendment proceeds in two parts. 547 U.S. 410, 418 (2006). First, the Court must determine "whether the employee spoke as a citizen on a matter of public concern." *Id.* If the answer to this initial question is no, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* If the answer to the first question is yes, "an employer must then demonstrate that it "had an adequate justification for treating the employee differently [based on his or her speech] from any other member of the general public." *Id.* (internal citation omitted); *see also Ruotolo v. City of New York*, 514

---

[5] While, in count seven, Mr. Gonzalez asserts a claim of retaliation against the City for his termination, the claim fails under § 1983 for the reasons articulated in Section (B)(i).

F.3d 184, 188 (2d Cir. 2008).

In determining whether an employee speaks as a citizen or as an employee, the Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. On the other hand, "employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government." *Id.* at 423. Whether an employee acted in accordance with his official duties or acted as a citizen is a practical inquiry. *Id.* at 424.

With respect to whether speech is a matter of public concern, a court must "take into account the content, form, and context of a given statement, as revealed by the whole record . . . and determine whether the speech arises from the speaker's status as a public citizen or from the speaker's status as a public employee." *Schlesinger v. New York City Transit Auth.*, No. 00 CIV. 4759, 2001 WL 62868, at *5 (S.D.N.Y. Jan. 24, 2001) (internal citations and quotation marks omitted). "[T]he court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it has a broader public purpose." *Id.* (internal citation and quotation marks omitted). A statement is a matter of public concern when it is "of political, social, or other concern to the community." *See Hueston v. City of New York*, No. 00-cv-9512, 2005 WL 53256, at *6 (S.D.N.Y. Jan. 10, 2005) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). In contrast, "speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." *Carpiniello v. Hall*, No. 07-cv-1956, 2010 WL 987022, at *6 (S.D.N.Y. Mar. 17, 2010) (internal quotation marks omitted). While the employee's motive for making the statement "may be one factor" in determining whether it is a matter of public concern, motive "is not, standing alone,

dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009). To determine whether

Mr. Gonzalez has pleaded a claim for First Amendment retaliation, the Court applies this framework

to each instance of allegedly protected speech that Mr. Gonzalez describes in the TAC.

       i.      Speaking as a Citizen and not a Public Employee

In the TAC, Mr. Gonzalez alleges that he was denied a position in November 2016 in part

"for exercising his First Amendment rights and refusing to engage in unlawful employment actions

with the Defendants" and "for his . . . filing of internal complaints." TAC at ¶ 75. The speech at

issue with Mr. Gonzalez's First Amendment retaliation claim is his alleged informing Mr. Kim, Mr.

Cox, and Ms. Reilly about corrupt and discriminatory practices in the Comptroller's Office.

Defendants ask the Court to dismiss Mr. Gonzalez's First Amendment retaliation claims for two

reasons. First, Defendants claim that Mr. Gonzalez fails to adequately plead that he was speaking

out as a citizen when he repeatedly complained about corruption and discrimination and filed the

Internal Grievance. *See* Defendants' Memorandum at 18-19. Second, Defendants argue that Mr.

Gonzalez fails to allege any causal connection between his complaints and any adverse action on the

part of the Defendants. The Court disagrees.

As the Supreme Court explained in *Garcetti*, the Court's inquiry into whether this speech

constituted part of Mr. Gonzalez's official duties is a "practical one" and it is not dispositive that the

speech is related to his job. 547 U.S. at 421, 424–25. As the *Garcetti* Court explained:

> Formal job descriptions bear little resemblance to the duties an
> employee actually is expected to perform, and the listing of a given task
> in an employee's written job description is neither necessary nor
> sufficient to demonstrate that conducting the task is within the scope
> of the employee's professional duties for First Amendment purposes.

547 U.S. at 424–25. At the same time, determining whether an employee spoke pursuant to his

official duties or as a citizen often "requires consideration of various facts that may not be before

the court at the motion to dismiss stage." *Denicolo v. Bd. of Educ. of City of New York*, 328 F. Supp. 3d

204, 215 (S.D.N.Y. 2018). That is the case here. The Court cannot determine from the allegations in the TAC that Mr. Gonzalez's protestations—both orally to his supervisors and in the form of the Internal Grievance—were made pursuant to a *duty* to report, and, therefore, were made as an employee rather than as a citizen. Indeed, Mr. Gonzalez contends, in his opposition, that the speech at issue was not taken pursuant to his official duties. *See* Plaintiff's Opposition at 12. Because the Court cannot, at this stage, determine that Mr. Gonzalez's complaints were part of his official duties, the Court declines Defendants' invitation to dismiss Mr. Gonzalez First Amendment Retaliation claims on this basis. *See Denicolo*, 328 F. Supp. 3d at 215 (denying defendants' motion to dismiss the plaintiff's First Amendment retaliation claims at the motion to dismiss stage because the court could not determine, based on the facts pleaded in the complaint, that the plaintiff spoke pursuant to her official duties and not as a citizen).

ii.     Speaking on a Matter of Public Concern

The Court also concludes that, in the TAC, Mr. Gonzalez alleges that his statements touched matters of public concern. Mr. Gonzalez alleges that he spoke out against the corrupt administration of the Comptroller's Office—such allegations about the misuse of the public fisc are certainly of public concern. *See, e.g., Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 265 (S.D.N.Y. 2006) (explaining that "speech relating to public corruption and/or a public entity's failure to adequately or properly investigate such corruption lies comfortably within the[] categories of protected expression.").

iii.    Adverse Action

"In the context of a First Amendment retaliation claim . . . only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Zelnik v. Fashion Institute of Technology*, 464 F.3d 217, 225 (2d Cir.2006) (citation omitted). Such adverse actions in the First Amendment retaliation

context include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Id.* at 226 (citation omitted). "This list of retaliatory conduct is certainly not exhaustive, however, and lesser actions may also be considered adverse employment actions." *Id.* (citation omitted). As described above, the adverse actions that Mr. Gonzalez alleges that he suffered fall within these categories. Again, Mr. Gonzalez claims that, because of his reporting of the corruption and discriminatory conduct within the Comptroller's Office and his filing of the Internal Grievance, the Individual Defendants refused to promote him in August 2015, *see* TAC at 35, and demoted him in January 2016, *see id.* at 36. Accordingly, the Court concludes that Mr. Gonzalez adequately pleads that he experienced adverse actions as a result of his speech.

      iv.     Connection Between Speech and Adverse Action

In order to establish a causal connection at the pleading stage, the "allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Davis v. Goord*, 320 F. 3d 346, 354 (2d Cir. 2003) (internal citation omitted); *see also McGuire v. Warren*, 490 F. Supp. 2d 331, 341 (S.D.N.Y. 2007); *Shekhem' El–Bey v. City of New York*, 419 F. Supp. 2d 546, 552 (S.D.N.Y. 2006). On a motion to dismiss, a reasonable inference of a causal connection is all that is required. *See Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999) ("[T]he plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect."); *Rivera v. Cmty. Sch. Dist. Nine*, 145 F. Supp. 2d 302, 309 (S.D.N.Y. 2001). This "can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999).

Here, largely for the same reasons the Court set forth in analyzing his Fourteenth Amendment retaliation claims, the Court concludes that Mr. Gonzalez has adequately alleged a

causal connection between his speech and the adverse actions that he suffered because of his speech. Mr. Gonzalez had worked in the Comptroller's Office for fourteen years without incident. After he began reporting misconduct to his supervisors and filed the Internal Grievance, he alleges that he was treated with hostility, denied a promotion, and demoted. As set forth in greater detail in Section (B)(iii)(2)(a), in the TAC, Mr. Gonzalez alleges facts that satisfy the causation element with respect to his claim of retaliation for his allegedly protected speech both indirectly, through temporal proximity, and directly by alleging retaliatory animus. Because the Court concludes that Mr. Gonzalez has adequately pleaded a claim for First Amendment retaliation, Defendants' motion to dismiss this claim against the Individual Defendants is DENIED.

### 3. Hostile Work Environment

Mr. Gonzalez contends that he was subjected to a hostile work environment based on his race, age, and disability. *See* TAC at ¶¶ 85-99. The TAC does not provide facts explaining how the Individual Defendants created a hostile work environment based on Mr. Gonzalez's race or age. Mr. Gonzalez, however, provides more details with respect to his disability. As explained above, Mr. Gonzalez faced various medical problems during the period of time relevant to this case, including herniations in his spinal column. *Id.* at ¶¶ 87. In either March or April of 2016, Mr. Gonzalez contends that Ms. Maglio-Scotti—who was his direct supervisor and, he contends, aware of his medical issues with his spine, neck, back, and waist—directed him to sort through and move 54 heavy boxes. *Id.* at ¶ 88. Because his doctor had not cleared him to undertake the kind of heavy lifting that Ms. Maglio-Scotti instructed him to perform, Mr. Gonzalez contends that he asked her if he could have assistance in completing the task. *Id.* at ¶¶ 89-90. Ms. Maglio-Scotti, Mr. Gonzalez claims, refused his request and he completed the task independently to avoid a charge of insubordination. *Id.* at ¶¶ 90-91. Because he had exhausted his leave under the Family and Medical Leave Act, Mr. Gonzalez represents that he sought leave without pay to allow him to recover from

his disability. *Id.* at ¶ 93. He contends that the Individual Defendants refused to consider him for this leave of absence and cites this as further evidence of a hostile work environment based on his disability.

To plead a claim for a hostile work environment under § 1983, a plaintiff must include facts plausibly demonstrating that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (internal quotation marks omitted); *see also Bermudez*, 783 F. Supp. 2d at 578. A plaintiff must satisfy "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (internal quotation marks omitted). This requires that the incidents be "more than episodic." *Id.* A court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Bermudez*, 783 F. Supp. 2d at 579 (internal citation omitted).

To state a hostile work environment claim, a plaintiff must plausibly allege "that the hostile work environment was caused by animus towards h[im] as a result of h[is] membership in a protected class." *Id.* at 578 (internal citation omitted). "It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic, such as race or gender." *Isbell*, 316 F. Supp. 3d at 591 (internal citation and quotation marks omitted). A plaintiff alleging a claim of

hostile work environment need not show that the working environment was both severe *and* pervasive; only that it was sufficiently severe or sufficiently pervasive, or a combination of these elements, to have altered his working conditions. *See Beale v. Mount Vernon Police Dep't*, 895 F. Supp. 2d 576, 586 (S.D.N.Y. 2012). Furthermore, to succeed on such a claim "a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Raniola v. Bratton*, 243 F.3d 610, 620 (2d Cir. 2001) (internal citation and quotation marks omitted).

Here, Mr. Gonzalez fails to allege that any of the hostile conduct at issue was motivated by his age or race. Even when drawing all reasonable inferences from the TAC in his favor, the Court concludes that the TAC is devoid of any allegations—let alone specific allegations—that Mr. Gonzalez was subjected to "discriminatory intimidation, ridicule, and insult" because of either his race or his age. Accordingly, Mr. Gonzalez's hostile work environment claims based on his race and age fail. *See, e.g., Jackson v. NYS Dep't of Labor*, No. 09 CIV. 6608 (KBF), 2012 WL 843631, at *4 (S.D.N.Y. Mar. 12, 2012) (dismissing plaintiff's hostile work environment claim where she failed to plead facts linking the contested actions to her membership in a protected class); *Mazurkiewicz v. New York City Health & Hosps. Corp.*, No. 09 CIV 5962 (WHP), 2010 WL 3958852, at *6 (S.D.N.Y. Sept. 16, 2010) (same).

Mr. Gonzalez's hostile work environment claim based on his disability, which he asserts solely against Ms. Maglio-Scotti, warrants a longer discussion. *See* Plaintiff's Opposition at 12 ("Gonzalez's disability-based hostile work environment was created by Maglio-Scotti alone."). The Court highlights the fact that Mr. Gonzalez has not pleaded this claim under the Americans with Disabilities Act (the "ADA") for an alleged failure to reasonably accommodate his disability. Instead, he has stated his claim as a hostile work environment claim based on his disability under § 1983. As described above, in the TAC, Mr. Gonzalez alleges that Ms. Maglio-Scotti knew of his

disability before she asked him to move the 54 boxes. *See* TAC at ¶ 88. He further contends that, because of his disability, he asked Ms. Maglio-Scotti whether he could have assistance in completing the task. *See id.* at ¶ 90. After she denied this request, Mr. Gonzalez alleges that he completed the task, which further exacerbated his disability, and then Ms. Maglio-Scotti repeatedly denied his requests for leave to recover from his disability. *See id.* at ¶ 93; Plaintiff's Opposition at 13. Furthermore, Mr. Gonzalez claims that Ms. Maglio-Scotti "constantly wrote emails to [him] . . . apparently to create a paper trail for taking adverse/punitive actions against him." *Id.* at ¶ 97. In the TAC, Mr. Gonzalez does not further describe the content of Ms. Maglio-Scotti's e-mails. Here, the predicate acts for Mr. Gonzalez's disability-based hostile work environment claim are Ms. Maglio-Scotti's supposed forcing Mr. Gonzalez to move the boxes by himself even though she knew of his disability and despite his request for assistance, her alleged repeated denial of his requests for leaves of absence, and, finally, her sending him numerous e-mails. Again, to plead a claim of hostile work environment, a plaintiff must allege conduct that "is objectively severe or pervasive—that . . . creates an environment that a reasonable person would find hostile or abusive . . . ." *Spence v. Bukofzer*, No. 15 CIV. 6167 (ER), 2017 WL 1194478, at *7 (S.D.N.Y. Mar. 30, 2017) (internal citations omitted).

Here, the conduct that Mr. Gonzalez alleges in support of his hostile work environment claim—whether considered in isolation or in the aggregate—does not meet the requisite standard. According to the complaint, Ms. Maglio-Scotti's failed to grant Mr. Gonzalez leave and sent him e-mails frequently. Those facts alone do not plausibly plead that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive . . . ." *Littlejohn*, 795 F.3d at 320–21 (internal quotation marks omitted). These facts suggest the conduct of a demanding and perhaps inconsiderate boss, but, as noted above "[h]ostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Bermudez*, 783 F. Supp. 2d at 579 (internal

citation omitted). That Mr. Gonzalez got emails from his boss and did not get all of the leave he requested do not suggest the kind of trauma against which a hostile work environment claim guards.

The directive to move the 54 boxes presents also does not plead a hostile work environment claim. At bottom, Mr. Gonzalez alleges that Ms. Maglio-Scotti directed him to perform a task and, in doing so, failed to consider or accommodate the limitations that his disability imposed on him to complete such a task. However, as stated above, Mr. Gonzalez seeks relief for this alleged conduct through a hostile work environment claim, not through the ADA. The request that Mr. Gonzalez move boxes was a single incident. A single incident can form the basis of a hostile work environment claim. *See Patterson*, 375 F.3d at 225-27. However, to adequately plead a hostile work environment claim based on a single incident, "a plaintiff must demonstrate . . . that [the] single incident was extraordinarily severe." *Raniola*, 243 F.3d at 620; *see, e.g., Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 136 (2d Cir. 2001) (holding that single instance of drugging and raping a co-worker created a hostile work environment). Being asked once to move boxes in the workplace— untethered to any other specific improper conduct targeting his protected status—does not rise to the requisite level of severity.

What's more, even if the Court concluded that this behavior was so severe as to alter Mr. Gonzalez's "working conditions . . . so as to substantially interfere with or impair his ability to do his job," his claim fails because he does not plead any facts to render plausible that the treatment that he complains of was *motivated* by his disability—which he must do. *See Isbell*, 316 F. Supp. 3d at 591 (S.D.N.Y. 2018). Therefore, Mr. Gonzalez's disability-based hostile work environment claim, as pleaded, fails. Accordingly, Defendants' motion to dismiss Mr. Gonzalez's hostile work environment claims under § 1983 on the basis of his race, age, and disability, as articulated in Count five, is GRANTED with respect to all of the Individual Defendants. The Court grants Mr. Gonzalez leave to replead these claims. *See Cruz v. TD Bank, N.A.*, 742 F.3d at 523.

iv. <u>Violation of Due Process</u>

Mr. Gonzalez alleges that the Individual Defendants' "continuing refusal . . . to consider [him] for leave without pay" amounts to a denial of his due process rights. *See* TAC at ¶ 98. This claim fails. First, Mr. Gonzalez's allegation of this violation of his due process rights fails to assert "more than labels and conclusions" as required under *Twombly*, and—as opposed to facts—the Court need not accept the legal conclusions asserted in the TAC to be true. *See Harris*, 572 F.3d at 72; *see also Pellegrino v. Cty. of Orange*, 313 F. Supp. 2d 303, 318 (S.D.N.Y 2004) (explaining, "the mere fact that [p]laintiff had a medical condition does not mean Orange County was required to place [p]laintiff on involuntary leave."). Accordingly, Defendants' motion to dismiss Mr. Gonzalez's § 1983 claim against the Individual Defendants for allegedly violating his due process rights as articulated in count five is GRANTED. The Court grants Mr. Gonzalez leave to replead this claim. *See Cruz v. TD Bank, N.A.*, 742 F.3d at 523.

**C. Mr. Gonzalez's Claims under the New York City Human Rights Law**

Mr. Gonzalez also asserts his discrimination, retaliation, and hostile work environment claims against the Individual Defendants under the NYCHRL. Defendants ask the Court to dismiss these claims as well. *See* Defendants' Memorandum at 14-15, 20-21, 24-25.

Although NYCHRL claims had for many years "been treated as coextensive with state and federal counterparts," the New York City Council, in passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act") "rejected such equivalence" in favor of a broader remedial scope. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). The Restoration Act established two new rules of construction for the NYCHRL: (1) "a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a *floor* below which the City's Human Rights law cannot fall'"; and (2) a requirement that the NYCHRL provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether

federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Restoration Act §§ 1, 7). The Second Circuit has clarified that these amendments to the Restoration Act require courts to analyze NYCHRL claims "separately and independently from any federal and state law claims." *See id.* Furthermore, claims under the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477– 78 (2011)).

Courts "must be mindful that the NYCHRL is not a 'general civility code,'" however. *Mihalik*, 715 F.3d at 110 (citing *Williams v. N.Y.C. Housing Auth.*, 61 A.D.3d 62, 64 (1ˢᵗ Dep't 2009)). "The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. It is not enough that a plaintiff has an overbearing or obnoxious boss. [He] must show that [he] has been treated less well at least in part 'because of [his protected characteristic].'" *Id.* (internal citation omitted); *see also Pena-Barrero v. City of New York*, No. 14-cv-9550 (VEC), 2017 WL 1194477, at *15 (S.D.N.Y. Mar. 30, 2017).

i. Discrimination

"The NYCHRL's standards governing discrimination claims are as or more generous to plaintiffs than those under the analogous federal statutes, such that a claim that satisfies federal law necessarily satisfies the NYCHRL." *Estevez v. S & P Sales & Trucking LLC*, No. 17 CIV. 1733 (PAE), 2017 WL 5635933, at *3 (S.D.N.Y. Nov. 22, 2017). For instance, while, an adverse employment action under the NYCHRL is defined the same as under §1983, *see Hanna v. New York Hotel Trades Council*, 851 N.Y.S.2d 818, 825 (N.Y. Sup. Ct. 2007), the NYCHRL "does not require 'a connection between the discriminatory conduct and a materially adverse employment action.'" *Garrigan v. Ruby Tuesday, Inc.*, No. 14-cv-155 (LGS), 2014 WL 2134613, at *3 (S.D.N.Y. May 22,

2014) (quoting *Mihalik*, 615 F.3d at 113). Instead, a plaintiff asserting a claim of discrimination

under the NYCHRL must allege that he "was treated 'less well' because of h[is] [membership in a

protected class]." *Pena-Barrero*, 2017 WL 1194477, at *15 (internal citation and quotations omitted).

"An employee is individually subject to suit under the NYCHRL if he 'actually participates in the

conduct giving rise to a discrimination claim,' or aids or abets such conduct." *Vaigasi v. Solow Mgmt.*

*Corp.*, No. 11 CIV. 5088 (RMB) (HBP), 2014 WL 1259616, at *7 (S.D.N.Y. Mar. 24, 2014) (quoting

*Feingold* v. *New York*, 366 F.3d 138, 158 (2d Cir. 2004)); *see also Davis–Bell v. Columbia Univ.*, 851 F.

Supp. 2d 650, 687 (S.D.N.Y. 2012) ("An individual may be held liable for aiding and abetting

violations of NYCHRL . . . if he participates directly in discriminatory acts alleged by the

[p]laintiff.").

### a. *Age and Race Discrimination*

The NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof,

because of the actual or perceived age, race, creed, color, national origin, gender, [or] disability . . . to

discriminate against such person in compensation or in terms, conditions or privileges of

employment." N.Y.C. Admin. Code § 8–107(1)(a).

Mr. Gonzalez claims that the Individual Defendants are liable under the NYCHRL for

discriminating against him based on his age and his race. Here, Mr. Gonzalez's claims of age and

race-based discrimination under the NYCHRL fail for largely the reasons discussed above in Section

(B)(iii)(1)(b): he fails to allege that any of the Individual Defendants actually participated in the

supposed discriminatory conduct. *See Doran v. New York State Dep't of Health Office of Medicaid Inspector*

*Gen.*, No. 15-CV-7217 (PKC)(SN), 2017 WL 836027, at *10 (S.D.N.Y. Mar. 2, 2017) (plaintiff must

allege defendant's personal involvement to state claim of discrimination under the NYCHRL).

Accordingly, Defendants' motion to dismiss Mr. Gonzalez's claims of age and race-based

discrimination under the NYCHRL as articulated in count two is GRANTED. The Court grants

Mr. Gonzalez leave to replead these claims. *See Cruz v. TD Bank, N.A.*, 742 F.3d at 523.

b. *Disability Discrimination*

To establish a *prima facie* case of disability discrimination under NYCHRL, a plaintiff must show "that (1) her employer is subject to the . . . NYCHRL; (2) she was disabled within the meaning of the NYSHRL and NYCHRL; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability." *Gioia v. Forbes Media LLC*, No. 09-CV-6114 (RJS), 2011 WL 4549607, at *9 (S.D.N.Y. Sept. 30, 2011). Therefore, as in the context of age or race discrimination discussed above, to plead a claim of disability discrimination under the NYCHRL, a plaintiff must allege that he was treated "less well" because of his disability. *Mihalik*, 715 F.3d at 110; *see also Schenk v. Verizon*, No. 10. CIV 6281 (GBD), 2011 WL 6778284, at *2 (S.D.N.Y. Dec. 20, 2011).

The factual allegations that Mr. Gonzalez presents in the TAC in support of his disability discrimination claim are the same as those that he presents to support his disability-based hostile work environment claim, which the Court described above. Again, Mr. Gonzalez bases his disability discrimination claim on Ms. Maglio-Scotti's denying him requested leave without pay, her directing him to move 54 boxes without assistance despite her supposed knowledge of his disability, and her sending him e-mails with great frequency. *See* TAC at ¶¶ 89-98.

The Court concludes that the TAC fails to plead a claim of disability discrimination under the NYCHRL because Mr. Gonzalez fails to allege facts that lead to the inference that his disability was a motivating factor for the allegedly discriminatory conduct. *See, e.g.*, *Schenk*, 2011 WL 6778284, at *2 (dismissing plaintiff's claim for disability discrimination brought "under the more liberal standard of the" NYCHRL because plaintiff failed to allege facts that created an inference that her disability motivated the challenged conduct). Accordingly, Defendants' motion to dismiss Mr. Gonzalez's claim of disability discrimination under the NYCHRL as asserted in count five is

GRANTED. The Court grants Mr. Gonzalez leave to replead this claim. *See Cruz v. TD Bank, N.A.*, 742 F.3d at 523.

ii. Retaliation

"[T]he retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010). Unlike retaliation claims under § 1983, retaliation complained of under the NYCHRL "need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms or conditions of employment." *Stewart v. City of New York*, No. 11 Civ. 6935 (CM), 2012 WL 2849779, at *11 (S.D.N.Y. July 10, 2012). Instead, the retaliatory act that the plaintiff complains of must "be reasonably likely to deter a person from engaging in protected activity." *Kumaga v. New York City School Const. Auth.*, No. 127817/02, 2010 WL 1444513, at *15 (internal citation and quotation marks omitted). For claims of retaliation, the plaintiff must show a "causal link" between the protected activity and the retaliatory act. *Id.*; *see also Williams v. N.Y. City Housing Auth.*, 335 Fed. Appx. 108, 110 (2d Cir. 2009).

Because Mr. Gonzalez's retaliation claims as asserted against the Individual Defendants under § 1983 survived Defendants' Motion to Dismiss, his retaliation claims brought under the NYCHRL's more solicitous standard similarly survive. *See Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671, 2013 WL 2358596, at *11 n.13 (S.D.N.Y. May 30, 2013) (denying motion to dismiss NYCHRL retaliation claim, "without further analysis," because court had denied defendant's motion to dismiss plaintiff's retaliation claim asserted under federal statute with stricter standard); *see also Gordon v. City of New York*, No. 14-CV-6115 (JPO), 2015 WL 3473500, at *13 (S.D.N.Y. June 2, 2015). Accordingly, Defendants' motion to dismiss Mr. Gonzalez's claims of retaliation under the NYCHRL against the Individual Defendants as asserted in counts one, two, three, four, and five is DENIED.

### iii. Hostile Work Environment

Mr. Gonzalez also asserts his claims of hostile work environment based on his race, age, and disability under the NYCHRL. The NYCHRL makes it unlawful for an employer or an employee or agent thereof to create a hostile work environment because of, *inter alia,* the actual or perceived age, race, creed, color, national origin . . . or disability of an individual. N.Y.C. Admin. Code § 8–107(1)(a). As explained above in the context of discrimination and retaliation under the NYCHRL, individual employees may be held liable under NYCHRL if they actually participated in the conduct giving rise to the claim. *See Nieblas-Love v. New York City Housing Auth.*, 165 F. Supp. 3d 51, 69 (S.D.N.Y. 2016); *Britt v. Merrill Lynch & Co.*, No. 08–CV–5356, 2011 WL 4000992, at *11 (S.D.N.Y. Aug. 26, 2011) (internal quotation marks and citation omitted).

Under the NYCHRL, a plaintiff need not demonstrate that the treatment was "severe or pervasive" to demonstrate a hostile work environment. *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 414–15 (S.D.N.Y. 2017) (quoting *Williams*, 61 A.D.3d at 73–78.). However, while the NYCHRL "was intended to be more protective than the state and federal counterpart," *Bermudez*, 783 F. Supp. 2d at 579, a plaintiff must still allege that he has been treated "less well" than other employees *because of* a protected characteristic.

Here, despite the NYCHRL's more liberal standard, Mr. Gonzalez's hostile work environment claims fail. As explained above in Section (B)(iii)(3), Mr. Gonzalez fails to allege facts in the TAC that that support the inference that he was treated less well *because of* his protected characteristics—his race, age, and disability. Accordingly, Mr. Gonzalez's hostile workplace claims asserted under the NYCHRL fail. Defendants' motion to dismiss Mr. Gonzalez's hostile work environment claims against the Individual Defendants under the NYCHRL as articulated in count five is GRANTED. The Court grants Mr. Gonzalez leave to replead these claims. *See Cruz v. TD Bank, N.A.*, 742 F.3d at 523.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion to dismiss Mr. Gonzalez's claims under § 1981 as articulated in counts one through seven is granted.  Mr. Gonzalez is denied leave to replead these claims.  Defendants' motion to dismiss Mr. Gonzalez's claims asserted against the City under § 1983 as stated in counts four and six is granted.  Mr. Gonzalez is granted leave to replead these claims.  Defendants' motion to dismiss Mr. Gonzalez's claims against the Individual Defendants in their official capacity under § 1983 as articulated in counts one through seven is granted.  Mr. Gonzalez is granted leave to replead these claims.  Defendants' motion to dismiss Mr. Gonzalez's claims of discrimination and hostile work environment against the Individual Defendants in their individual capacities under § 1983 and the NYCHRL as set forth in counts two and five is granted.  The Court grants Mr. Gonzalez leave to replead these claims.  Defendants' motion to dismiss Mr. Gonzalez's retaliation claims against the Individual Defendants in their individual capacities under § 1983 and the NYCHRL as articulated in counts one, two, three, four, and five is denied.  Any amended complaint asserting repleaded claims in accordance with this order is due no later than thirty days from the date of this order.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 84.

SO ORDERED.

Dated: March 28, 2019
         New York, New York

_____
GREGORY H. WOODS
United States District Judge